UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-60364-CIV-ZLOCH

MAURICE ZEDECK,

      Plaintiff,

vs.                                    **O R D E R**

TARGET CORPORATION,

      Defendant.

_____/

    THIS MATTER is before the Court upon Defendant Target Corporation's Motion For Summary Judgment (DE 26). The Court has carefully reviewed said Motion and the entire court file and is otherwise fully advised in the premises.

    Plaintiff Maurice Zedeck initiated the above-styled cause with the filing of his Complaint (DE 1) on March 14, 2007. Plaintiff alleges claims for discrimination on the basis of religion and constructive discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) (2006) (hereinafter "Title VII"), and discrimination on the basis of religion in violation of the Florida Civil Rights Act of 1992, Fla. St. § 760.10(1) (2008) (hereinafter "FCRA"). Specifically, Plaintiff alleges he was discriminated against, which amounted to a constructive discharge, when he was ordered to remove his necklace and received harsher treatment for his refusal to do so. In the instant Motion (DE 26), Defendant argues that Plaintiff suffered no adverse employment action, that Defendant had legitimate, non-discriminatory reasons for all actions taken with respect to

Plaintiff, and that Plaintiff cannot establish that Defendant's reasons are pretext.  For the reasons more fully expressed below, the Court finds that Plaintiff has suffered an adverse employment action, but has failed to show any similarly situated individual was treated more favorably.  In the alternative, if it were later determined that both an adverse employment action took place and a similarly situated individual was treated more favorably, the Court finds that Defendant has articulated legitimate, non-discriminatory reasons for its actions, and that the same have not been shown to be pretext.  Therefore, the Court shall enter summary judgment for Defendant.

## I. Background

Plaintiff Maurice Zedeck was employed by Defendant Target Corporation as Head Baker.[1]   He began first at its Miramar store in September of 2003 and in September of 2005 he transferred to the Sawgrass store.  Defendant was expanding its Sawgrass store to include a bakery area, and Plaintiff transferred there to assist with the expansion.  In November of 2005 he resumed his work as a baker.  At the Sawgrass Target, Plaintiff's bakery team leader was Jim Miller (hereinafter "Miller"), and Lorraine Kelly (hereinafter "Kelly") held a managerial position over the bakery, deli, and Starbucks sections of the store.  Plaintiff had worked cordially with Kelly at the Miramar store, and it was Kelly who invited him

---

[1] Unless otherwise noted, these facts are either taken from Plaintiff's Statement Of Material Facts (DE 32, pp. 2-8) or are deemed admitted by Plaintiff's failure to controvert certain facts alleged in Defendant's Rule 7.5 Statement (DE 27) and supported by evidence in the record.  S.D. Fla. L.R. 7.5(D).

to transfer to the Sawgrass store.  Deposition of Maurice Zedeck, DE 28, Ex. A, pp. 45-46 (hereinafter "Zedeck Depo.").

A regulation promulgated by the Federal Department of Health and Human Services, which was in effect at all times material, prohibits food service employees from wearing jewelry that could fall into food.  21 C.F.R. § 110.10(b)(4) (2007).  Mirroring this regulation, Defendant also has a policy applicable to all its employees prohibiting them from wearing jewelry when working near food.  The policy exempts from its prohibition Medical Alert bracelets and plain wedding bands, though gloves must be worn with the latter.  Defendant's Uniform Standards, Zedeck Depo., Ex. 5.

One such employee covered by Defendant's policy on jewelry was Patricia Sarmiento De Santiago, who worked as a cake decorator in the bakery department.  Ms. Santiago almost always wore a high turtle neck sweater when she worked.  Deposition of Patricia Sarmiento De Santiago, DE 34, Ex. A.8, pp. 17-18 (hereinafter "Santiago Depo.").  She testified that, despite Defendant's prohibition, she wears a necklace to work under her turtle neck sweaters, but removes it if she wears other types of tops.  Id. p. 18.

In preparation for the opening of the bakery department at the Sawgrass store, Defendant retained a third-party inspection company to inspect the bakery department and inform it of possible health code violations.  The inspection company informed Defendant that, among other things, its food-service employees must remove all jewelry when working near food.  Immediately after that inspection,

3

Kelly approached Plaintiff and other employees working in her departments and directed them to remove all jewelry when they were working near food.  At the time, Plaintiff was working near food and wearing a necklace, which was visible over his t-shirt.  Zedeck Depo. pp. 51-52 ("Probably four-fifths of the chain itself was under the T-shirt.  The T-shirt came to my neck.").  Appended to the necklace was a Star of David, a Jewish religious symbol.  Although Plaintiff was aware of Defendant's policy prohibiting jewelry, id. p. 23, he refused to remove his necklace and stated that he never removes it.  In response, Kelly walked away without further comment or discussion.

Kelly later returned with Chrissenda Pierre-Louis (hereinafter "Pierre-Louis"), a member of Defendant's human resources department.[2]  The two again ordered Plaintiff to remove his necklace and he again refused.  Pierre-Louis threatened Plaintiff with suspension as discipline for his refusal.  Plaintiff again refused to remove the necklace; despite the threat, he was not suspended.  Nearly contemporaneous with these events, Plaintiff found a note one morning criticizing his recent performance.  The note, rather brusque in tone, is attributed to Kelly and directs Plaintiff on what to bake, details a procedure for completing

---

[2] The Parties dispute, and the facts are ambiguous on the issue of, whether this second encounter regarding Plaintiff's necklace ever took place.  Plaintiff maintains that it did; Defendant makes no mention of any second encounter.  Taking this factual ambiguity in the light most favorable to Plaintiff, the Court proceeds as though it did take place. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

tasks, and reiterates Kelly's disappointment in how the bakery department appeared.  Zedeck Depo., Ex. 7.

Before Christmas of 2005, Plaintiff's work ethic evidently satisfied his supervisors.  Kelly testified that Plaintiff "was working as hard as he could" during that time.  Deposition of Lorraine Kelly, DE 29, Ex. D, p. 58 (hereinafter "Kelly Depo.").  However, after Christmas, the situation changed.  Plaintiff testified that his desire to quit his job surfaced during the holiday season at the end of December.  Zedeck Depo. pp. 38-39.  This was one of Defendant's busiest times of year.  Id.  During this time, Kelly directed Plaintiff that he was to help unload products from delivery trucks into the freezers and to move items from the back freezers to the front freezers.  Kelly also informed Plaintiff, contrary to what he was told when he started at the Sawgrass store, that he was required to bake doughnuts in the mornings.  Id. pp. 68-69.  At that time, bakery workers' hours and assignments were also shifted around, including cutting the hours of some workers in the bakery and sending them to other departments.  When he learned of his new assignments and the change in workers' schedules, Plaintiff complained to Kelly of his health problems, including suffering from diabetes and having had a heart attack.  Kelly testified that Plaintiff's work suffered in that he stopped multitasking.  That is, rather than remove dough from the freezer to thaw while he worked on another product, Plaintiff would only concentrate on one item at a time, whether it be kneeding dough or watching it thaw.  Id. pp. 46, 58.  Miller also testified

to a downturn in Plaintiff's productivity.  Deposition of James
Miller, DE 34, Ex. A.4, pp. 10-13 (hereinafter "Miller Depo.").
Kelly repeatedly inquired with Plaintiff as to why his manner had
changed, but Plaintiff never spoke to either Miller or Kelly about
it.  Plaintiff resigned his position early in January of 2006.

Plaintiff initiated the above-styled cause on March 14, 2007,
seeking redress for Defendant's orders that he remove his necklace,
threatening to suspend him, increasing his work duties, and
removing staff in his department.  Defendant does not dispute that
Plaintiff has exhausted his administrative remedies and properly
proceeded through the jurisdictional prerequisites of filing a
claim with the Equal Employment Opportunity Commission.  See
Defendant's Answer, DE 6, ¶¶ 2, 28.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is
appropriate

> if the pleadings, the discovery and disclosure materials
> on file, and any affidavits show that there is no genuine
> issue as to any material fact and that the movant is
> entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see also Eberhardt v. Waters, 901 F.2d 1578,
1580 (11th Cir. 1990).  The party seeking summary judgment "always
bears the initial responsibility of informing the district court of
the basis for its motion, and identifying those portions of the
pleadings, depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any, which it believes
demonstrate the absence of a genuine issue of material fact."
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quotation

6

omitted).  Indeed,

> the moving party bears the initial burden to show the
> district court, by reference to materials on file, that
> there are no genuine issues of material fact that should
> be decided at trial.  Only when that burden has been met
> does the burden shift to the non-moving party to
> demonstrate that there is indeed a material issue of fact
> that precludes summary judgment.

Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991);

Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

The moving party is entitled to "judgment as a matter of law"

when the non-moving party fails to make a sufficient showing of an

essential element of the case to which the non-moving party has the

burden of proof.  Celotex Corp., 477 U.S. at 322; Everett v.

Napper, 833 F.2d 1507, 1510 (11th Cir. 1987).  Further, the

evidence of the non-movant is to be believed, and all justifiable

inferences are to be drawn in his favor.  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 255 (1986).

### III. Discrimination Under Title VII and FCRA

Plaintiff's claim for discrimination is one of indirect

evidence.  The disposition of indirect evidence employment

discrimination cases arising under Title VII is governed by the

burden shifting analysis set forth in McDonnell Douglas Corp. v.

Green, 411 U.S. 792 (1973).[3]  Under this regime, Plaintiff must

establish a prima facie case of discrimination.  If Plaintiff

---

[3] In Counts I and III of his Complaint, Plaintiff alleges
claims for discrimination in violation of Title VII and the FCRA.
The same analysis governs the resolution of Title VII cases and
those brought under the FCRA.  Harper v. Blockbuster Entertainment
Corp., 139 F.3d 1385, 1389 (11th Cir. 1998).

succeeds in this, Defendant bears a burden of production to articulate legitimate, non-discriminatory reasons for its actions against Plaintiff.  Plaintiff must then carry the ultimate burden of persuasion by establishing that Defendant's articulated reasons are pretext and undeserving of credibility.  Id.

## A. Prima Facie Case

Under the McDonnell Douglas analysis, to establish a prima facie case of discrimination Plaintiff must show that 1) he was a member of a protected class, 2) he was qualified for the position at issue, 3) he suffered an adverse employment action, and 4) other similarly situated employees outside the class were treated more favorably.  See Rice-Lamar v. City of Ft. Lauderdale, Fla., 232 F.3d 836, 842-43 (11th Cir. 2000).  Defendant does not dispute that Plaintiff is a member of a protected class, or that he was qualified for his position.  DE 26, p. 6.  Therefore, the only matters at issue are whether Plaintiff suffered an adverse employment action and whether other similarly situated individuals were treated more favorably than he.

### 1. Adverse Employment Action

In 2006, the Supreme Court clarified the test for what would constitute an adverse employment action in the context of retaliation in violation of Title VII.  See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. ___, 126 S. Ct. 2405, 2409 (2006) (defining the anti-retaliation provision of Title VII to prohibit "employer actions [that are] harmful to the point that they could well dissuade a reasonable worker from making or supporting a

charge of discrimination"). White was decided only on the issue of retaliation, and did not adjudicate a discrimination claim. The Eleventh Circuit, in an unpublished opinion, has recently indicated its reading of White to be so limited. See DaCosta v. Birmingham Water Works & Sewer Bd., 256 Fed. Appx. 283, 288 n.6 (2007) ("We further note that the broader view of adverse employment actions taken by the Supreme Court in [White] appears limited to retaliation cases and does not alter this court's precedent in discrimination actions."). Therefore, without clear guidance by either the Supreme Court or the Eleventh Circuit that the law as it existed before White has changed, the Court will continue to apply existing precedent of what constitutes an adverse employment action. Thus, "to prove adverse employment action in a case under Title VII's anti-discrimination clause, [Plaintiff] must show a serious and material change in the terms, conditions, or privileges of employment." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (2001).[4] This standard would encompass "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 760-61 (1998).

Plaintiff alleges the following four incidents as adverse employment actions: Plaintiff was ordered to remove his necklace, which had a Star of David appended to it, he was advised he would

_____

[4] In his Response to the instant Motion, Plaintiff also cites Davis to the Court for this same proposition. DE 32, p. 10.

be suspended for his refusal to remove the same, his assistants were taken away from him, and his job duties and responsibilities were increased.  Compliant, DE 1, ¶¶ 18, 19, 21, 22, 47, 48; see also DE 32, pp. 10-15.

The record is clear that Lorraine Kelly spoke to Plaintiff regarding the necklace he was wearing.  Specifically, she told Plaintiff that all jewelry, including the necklace, had to be removed.  After his refusal, Kelly returned with Pierre-Louis and the two again demanded that Plaintiff remove his necklace. Plaintiff strenuously argues that such orders were motivated by the fact that a Star of David was attached to his chain and were thus discriminatory.

An adverse employment action is a serious and material change in the terms, conditions, or privileges of employment.  Davis, 245 F.3d at 1239.  The Court notes that in this instance Defendant was enforcing its dress code, which parrots a federal regulation.  Both the regulation and Defendant's written policy prohibit individuals coming into contact with food from wearing necklaces of the type Plaintiff wore.  21 C.F.R. § 110.10(b)(4) (2007) (requiring the removal of "all unsecured jewelry and other objects that might fall into food"); Defendant's Uniform Standards, Zedeck Depo., Ex. 5 ("No jewelry can be worn when handling food.  The only exceptions are plain rings, such as a solid wedding band, and Medical Alert bracelets.  Jewelry can harbor bacteria or fall into food.").[5]

_____

[5] Plaintiff admits that he was aware of Defendant's policy regarding jewelry.  Zedeck Depo. pp. 23-24.

Thus, rather than a "serious and material change" in the terms and conditions of employment, the policy prohibiting Plaintiff from wearing jewelry was itself a term of his employment. See Zedeck Depo. p. 31 (stating Plaintiff's recognition of the applicable uniform policies of Defendant). The order enforcing the same is likewise not a change in the terms and conditions of employment, but rather an enforcement of the existing terms of employment. Moreover, it is undisputed that Plaintiff never removed his necklace. Zedeck Depo. p. 63. Therefore, the Court finds that the directives requiring Plaintiff to remove his necklace while he was working in the bakery were not adverse employment actions.[6] Davis, 245 F.3d at 1239.

Plaintiff next argues that after the second encounter with Kelly and Pierre-Louis, he was advised by Pierre-Louis that he would be suspended for his refusal to remove his necklace while working in the bakery. Plaintiff's regular work schedule, a term of his employment, very probably would have been interrupted by an actual suspension. However, there is no indication in the record, for example, of how long the suspension would have been or whether Plaintiff would have continued to draw his pay during his time away. Therefore, the Court finds that Plaintiff has failed to show that this threat of suspension was such a serious and material

---

[6] Plaintiff alleges in his testimony that he suffered further adverse employment actions after his refusal to remove the necklace. Zedeck Depo. p. 63. Thus, the order to remove his necklace and his refusal could form the factual basis for a claim for retaliation in response to legitimate opposition activity, but Plaintiff has failed to raise such a claim here.

change in the terms and conditions of his employment to constitute an adverse employment action.

Plaintiff's third allegation of an adverse employment action is that his assistants were taken away from him in response to his refusal to remove his necklace. In addition to Plaintiff, who was employed as the Head Baker, the bakery department at the Sawgrass Target was staffed by a cake decorator, several packers, and Jim Miller, the supervisor. Kelly Depo. pp. 17 ("We had two bakers. We had a -- one cake decorator. Then we had myself, which was the team leader, and then we had packagers."); Zedeck Depo. p. 37 ("It would be Jim Miller, the team leader; myself, the head baker; cake decorator, and someone doing miscellaneous things."); see also Miller Depo. pp. 12-14. Plaintiff testified that, following his refusal to remove his necklace, the two packers were taken away from him. Zedeck Depo. p. 63.

The evidence on this issue is sparse. However, numerous witnesses, including Plaintiff, testified that the packers were employed to assist the bakery department generally by doing various tasks and were not employed to assist Plaintiff. E.g., Kelly Depo. pp. 17, 89-90 (describing packers' duties as stocking tables, removing items from the freezer, putting labels on items, and packaging freshly baked items); Zedeck Depo. p. 88 (describing the additional workers as "two part-time people, you know, to help out"); Santiago Depo. pp. 31-33. The packers also reported to Jim Miller, the bakery team leader, and not to Plaintiff. Kelly Depo. p. 87. Despite Plaintiff's mere assertion that Defendant removed

the packers improperly, there is no evidence in the record supporting any finding other than Defendant's assertion that it did not "remove" the packers but in fact was having trouble keeping them there.  See id. pp. 18, 48-49; Santiago Depo. pp. 29-33.  Due to Plaintiff's failure to offer any evidence to the contrary, the Court finds that Defendant's removal of some of the packers does not constitute an adverse employment action.  Davis, 245 F.3d at 1239.

Finally, Plaintiff claims that his receipt of an undated note from Loraine Kelly, in which she criticized his work product and demanded more of him, constitutes an adverse employment action.  Specifically, Kelly informed Plaintiff that he must begin baking doughnuts in the mornings and he was required to help unload trucks, as well as load and unload the freezers.  This, Plaintiff argues, was all in contravention of what he was told before.  It is clear that the reception of the note criticizing Plaintiff's work cannot of itself form the basis for a discrimination claim.  Davis, 245 F.3d at 1242 ("Simply put, the loss of prestige or self-esteem felt by an employee who receives what he believes to be unwarranted job criticism or performance review will rarely—without more—establish the adverse action necessary to pursue a claim under Title VII's anti-discrimination clause.") (footnote omitted).  Moreover, there is no evidence that the note was an instrument used to remove or prevent any benefit to Plaintiff, and so its delivery is not an adverse employment action.  Cf. Gillis v. Ga. Dep't of Corrs., 400 F.3d 883, 888 (11th Cir. 2005) (limiting the class of

worker evaluations that qualify as adverse employment actions to those "that directly disentitle[] an employee to a raise of any significance"). Finally, Plaintiff disclaims any argument against Defendant's right as an employer to dictate the duties of its employees. Zedeck Depo. p. 69.

Plaintiff additionally argues that the effect of the note was to increase his job responsibilities in direct response to his refusal to remove his necklace. After Plaintiff's refusal, in contravention to the directive of his employer, his situation at work became less than idyllic. The tasks of unloading trucks, obtaining items from the freezers, and making doughnuts, which Plaintiff understood were not required of him, were now his responsibility. Thus, the terms and conditions of his employment had been altered. Noting that Plaintiff complained of health problems to Kelly, the Court finds that such increase in his duties was a serious and material change in the terms and conditions of his employment. Therefore, the Court finds that the increase in job responsibilities was an adverse employment action. Davis, 245 F.3d at 1239.

## 2. Similarly Situated Individual

As stated above, the Court has found that Plaintiff suffered an adverse employment action when Defendant, by Lorraine Kelly, increased his job responsibilities. For the final part of Plaintiff's prima facie case, he must establish that other similarly situated employees were treated more favorably than he. Rice-Lamar, 232 F.3d at 842.

"In determining whether employees are similarly situated for purposes of establishing a <u>prima</u> <u>facie</u> case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." <u>Holifield v. Reno</u>, 115 F.3d 1555, 1562 (11th Cir. 1997) (citation omitted).  The Eleventh Circuit requires a very high degree of similarity for a co-worker to be considered a similarly situated individual.  <u>Maniccia v. Brown</u>, 171 F.3d 1364, 1368 (11th Cir. 1999) ("[T]he quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.").  This high standard of similarity prevents the Court from sitting as an Article III personnel department, reviewing the varying discipline of a defendant's employees.  <u>See</u> <u>Elrod v. Sears,</u> <u>Roebuck and Co.,</u> 939 F.2d 1466, 1470 (11th Cir. 1991).

Plaintiff has failed to offer anything other than vague and non-probative references to others wearing jewelry while working in the Sawgrass Target.  Plaintiff points to Patricia Sarmiento De Santiago as an individual he claims was similarly situated but received more favorable treatment.  The undisputed testimony confirms that Ms. Santiago was employed by Defendant in an area of the store where jewelry is forbidden by Defendant's policy and the federal regulation noted above and wore jewelry there.  However, Santiago was not similarly situated to Plaintiff.  She testified as follows at her deposition, and is quoted in Plaintiff's Response (DE 32):

```
Q. Do you wear jewelry?
A. No. No.
Q. Do you wear jewelry at work?
A. No, not really.
Q. Prior to the time you were separated, did you wear
jewelry at work?
A. I used to wear some chains and rings -- earrings, but
actually basically in the food work they don't let you use too
much jewelry at all.
Q. This is how you come to work, like this?
A. Yes.  I come from --
Q. You're coming from work right now?
A. Yes.
Q. You haven't taken off anything or added anything?
A. No.  No.
Q. Do you have a necklace on right now?
A. I have one little one, but it's under.
Q. Can I see it?
A. Uh-huh.
[Counsel for Plaintiff]: Let the record reflect the
deponent has on what looks like a gold link necklace.
Q. You wore that --
[Counsel for Defendant]: If we are going to do let the
record reflect, let the record reflect the necklace is one
hundred percent non-visible and is under a high turtleneck
sweater.
Q. Do you always wear your turtleneck to work?
A. Yes.
```

Santiago Depo. pp. 17-18.

Although Santiago wears a necklace to work on occasion, it is undisputed that it is worn under a high turtleneck sweater.[7] Santiago went on to testify that she intermittently wears "bead sweaters or something like that," but does not wear a necklace on those occasions.  Id. p. 18.  Plaintiff testified that he wears a red t-shirt and an undershirt while working.  Zedeck Depo. p. 51-52.  His necklace, moreover, was sticking out of the top of his

---

[7] For the benefit of the Parties and any reviewing court, the Court notes that it is undisputed that Santiago's necklace is not visible through the turtleneck.  Santiago Depo. p. 18.

shirt.  Id. ("Probably four-fifths of the chain itself was under
the T-shirt.  The T-shirt came to my neck."); Miller Depo. pp. 8-9
("Yeah, you could see the necklace.").  Thus, the behavior of the
two is markedly different.  Plaintiff's necklace was sticking out
of the top of his t-shirt and was brought to Kelly's attention by
the third-party inspection firm as a health code violation.  To the
contrary, Santiago's necklace was underneath a high turtleneck
sweater.  The two are clearly distinguishable.  Therefore, the
Court finds that Plaintiff and Santiago were not similarly
situated.  Maniccia, 171 F.3d at 1368.

In addition to Santiago, Plaintiff also references individuals
he personally observed inside Defendant's store working near food
and wearing jewelry.  Zedeck Depo. pp. 98-101.  Any mention of
these latter individuals recounted in his deposition is tellingly
absent from his Response (DE 32).  Additionally, with respect to
both these individuals and Santiago, Plaintiff has failed to
establish more favorable treatment.  Plaintiff has offered no
evidence as to whether Defendant knew that others were wearing
jewelry, or their disciplinary records.  The Court will not assume
that others are treated more favorably simply because Plaintiff is
unhappy with how he was treated.  Plaintiff always "retains the
burden of persuasion."  Texas Dep't of Community Affairs v.
Burdine, 450 U.S. 248, 256 (1981).

In support of his argument that other employees were similarly
situated and received more favorable treatment, Plaintiff has also
submitted what he claims is a photograph of an employee of

Defendant wearing jewelry while working near food in contravention of Defendant's policy. See Declaration Of Jeff Tobin, DE 34, Ex. A.10; see also DE 56, p. 4. The Court notes that a decision on summary judgment is to be made after full consideration of all pleadings, discovery and disclosure materials, and affidavits on file. Fed. R. Civ. P. 56(c). Moreover, in this posture, the Court construes all evidence in the light most favorable to Plaintiff. Anderson, 477 U.S. at 255. However, the photograph submitted does not aid the Court in its disposition of the instant Motion (DE 26). The photograph is a black square with several small white dots in no apparent order. A color version of the photograph, which is of only scant improvement in quality over the version noted above, is maintained in the paper court file by the Clerk of this Court. The image depicted is not a recognizable subject, nor does the picture demonstrate any context. The image is also not of a quality to make it useful in examining the record for evidence of discrimination. In addition, the Declaration states that this picture was taken in early 2008; however, in the instant action Plaintiff complains of discrimination in late 2005. Even if the Court took the leap of faith and believed Plaintiff's assertion that the photograph is probative evidence, a photograph taken over two years after the relevant time cannot demonstrate a similarly situated individual. There is nothing in the record making or supporting an argument that Defendant's policies at the two times are the same, that managers are the same, or that Defendant acquiesced to one instance of wearing jewelry and prohibited

Plaintiff from doing so.  Moreover, the Declaration (DE 34) leaves unclear whether this photograph was even taken in the store in which Plaintiff was employed.   DE 34, Ex. A.10, ¶ 2.  In short, the photograph speaks for itself, and it says nothing.[8]

Even so, there is a second reason why Plaintiff fails to point to a similarly situated employee who was treated more favorably. It is undisputed that Plaintiff continued to wear his necklace after Defendant became aware of his wearing the same.  Zedeck Depo. p. 63.  Plaintiff challenges other actions of Defendant, including the threat of suspension, criticism of work, and added job duties, as unfavorable treatment.  Defendant does not dispute that, as reflected in the record, no other employee received such treatment. Therefore, any person Plaintiff holds up as a comparator must fit the mold of engaging in similar conduct and having Defendant acquiesce to the same.  Maniccia, 171 F.3d at 1368.

Plaintiff does not dispute that Lorraine Kelly became aware that others working near food were wearing jewelry and ordered all of them to remove it.  Kelly Depo. p. 34; Defendant's Rule 7.5 Statement, DE 27, ¶ 20.[9]   Kelly also testified that she cannot

---

[8] The Declaration Of Jeff Tobin (DE 34, Ex. A.10) does nothing to add to the probative value of its attached photograph.  See id. ¶¶ 2-3 ("On February 23, 2008, I observed and photographed several employees at the Miramar Super Target and the Sawgrass Super Target.  The attached photograph accurately depicts my observations of employees wearing jewelry in the bakery, deli, and/or Starbucks.").

[9] Plaintiff failed to controvert this fact as alleged by Defendant and supported by evidence in the record.  Thus, it is deemed admitted.  S.D. Fla. L.R. 7.5(D).

enforce work rules that she does not know are being broken.  Id. at 91 ("I wouldn't know if they had [an ankle bracelet] on because I can't see it.").   However, Plaintiff offers no evidence that Defendant was aware of and overlooked the wearing of jewelry by other workers.   Thus, Plaintiff has pointed to no comparator treated more favorably than he.

Accordingly, Plaintiff has failed to establish a prima facie case of discrimination because, while he has suffered an adverse employment action, he cannot point to any similarly situated individual who was treated more favorably.   However, in the alternative and for the benefit of the Parties and any reviewing court, the Court will assume that Plaintiff has met his prima facie burden.   Therefore, under the McDonnell Douglas burden shifting analysis, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its conduct toward Plaintiff.

### B. Legitimate, Non-discriminatory Reason

The burden now shifts to Defendant to articulate a legitimate, non-discriminatory reason for the employment decisions.  McDonnell Douglas, 411 U.S. at 802.  This burden is one of production, and not persuasion, St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993); Burdine, 450 U.S. at 256-58, because under the McDonnell Douglas burden shifting analysis, "[t]he plaintiff [always] retains the burden of persuasion." Burdine, 450 U.S. at 256.

In the instant Motion (DE 26), Defendant articulates its policy on jewelry being worn near food, a Federal Department of

Health and Human Services regulation on the same subject, and its prerogative to direct its employees' work as legitimate, non-discriminatory reasons for its actions.  The Court finds these reasons satisfy Defendant's burden of production.  <u>Hicks</u>, 509 U.S. at 506-07.

Defendant's policy prohibiting employees from wearing jewelry while handling food is legitimate and non-discriminatory.  While it has allowances for certain types of jewelry, the work rule applies without discriminating.  <u>See</u> Defendant's Uniform Standards, Zedeck Depo., Ex. 5.  The rule is clearly based on a federal regulation relevant to handling food for public consumption.  <u>See</u> 21 C.F.R. § 110.10(b)(4) (requiring the removal of "all unsecured jewelry and other objects that might fall into food").  Thus, Defendant's first two reasons satisfy its burden.  <u>Hicks</u>, 509 U.S. at 506-07.

Defendant next offers its business judgment in defense of the actions taken toward Plaintiff.  As recounted above, Plaintiff complains of the following: Plaintiff was ordered to remove his necklace, he was advised he would be suspended for his refusal to remove the same, his assistants were taken away from him, and his job duties and responsibilities were increased.  Compliant, DE 1, ¶¶ 18, 19, 21, 22, 47, 48.  The Court finds that all of these actions are within the prerogative of an employer.  First, enforcing work rules through appropriate punishments has been accepted by the courts.  <u>See</u> <u>Republic Aviation Corp. v. NLRB</u>, 324 U.S. 793, 798 (1945) (recognizing the "undisputed right of employers to maintain discipline in their establishments").

Second, determining the number, identity, scheduling, and job duties of a staff are the <u>sine</u> <u>qua</u> <u>non</u> of what it means to be an employer. <u>Blackshear Mfg. Co. v. Umatilla Fruit Co.</u>, 48 F.2d 174, 175 (5th Cir. 1931) ("The law exacts of every agent and employee diligence, good faith, and obedience to instructions in the execution of his agency or employment . . . .").[10]  Therefore, the Court finds that Defendant has met its burden of proffering a legitimate, non-discriminatory reason for its actions.

## C. Pretext

The burden now shifts to Plaintiff to demonstrate that Defendant's stated reasons for its action against him are pretext and undeserving of credibility. <u>McDonnell Douglas</u>, 411 U.S. at 804. Plaintiff "may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." <u>Burdine</u>, 450 U.S. at 256. "If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment." <u>Crawford v. City of Fairburn, Ga.</u>, 482 F.3d 1305, 1308 (11th Cir. 2007) (citing <u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1037 (11th Cir. 2000) (en banc)). Plaintiff argues that Defendant's articulated reasons are pretext because he disagrees with their wisdom, he finds them

_____

[10] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

inconsistent, and they fail to address the timing of Defendant's actions.

Plaintiff makes no small matter out of the fact that Defendant allows the wearing of certain rings and Medical Alert bracelets but not necklaces and other types of jewelry.  The Court notes that gloves must be used whenever a wedding band is worn, Zedeck Depo., Ex. 5, and will accept the reasonableness of an exception for people requiring Medical Alert bracelets for the obvious reasons. Nevertheless, Plaintiff may not quarrel with the wisdom of Defendant's policies. Chapman, 229 F.3d at 1030.  The Court will not sit in review of whether Defendant's policies are optimal for accomplishing the objectives desired, but will only look to whether Defendant relied upon its legitimate rules when dealing with Plaintiff.  See Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 (7th Cir. 1988) ("No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere."), cited in Elrod, 939 F.2d at 1470 (11th Cir. 1991).  Rather, Plaintiff must establish that Defendant's rule prohibiting the wearing of jewelry around food is discriminatory or pretextual. Burdine, 450 U.S. at 256.

As stated above, Defendant's uniform policy is modeled on a federal regulation.  Thus, the rule itself, as well as the directive to follow it and any threat of sanction following upon the willful, and particularly blunt, refusal to follow an employer's lawful policy, are not grounds for suit.  Cf. Travers v.

<u>Jones</u>, 323 F.3d 1294, 1296 (11th Cir. 2003) ("An employer may, however, discipline an employee for insubordination."); <u>see also</u> <u>McNally v. United States</u>, 483 U.S. 350, 377 n.10 (1987) (Stevens, J., dissenting) ("When a person is being paid a salary for his loyal services, any breach of that loyalty would appear to carry with it some loss of money to the employer——who is not getting what he paid for."). Thus, the Court finds that the Defendant acts properly as an employer when it requires obedience of its employees and threatens punishment for disobedience. Moreover, even rejecting Defendant's contention that Plaintiff was accommodated and allowed to continue wearing his necklace, there is no dispute that Plaintiff was not actually suspended. Therefore, the Court finds that Plaintiff has failed to establish that Defendant's articulated legitimate, non-discriminatory reasons for the directive to Plaintiff to remove his necklace and the threat of suspension made by his superiors for his flagrant violation of the same are pretext.

Defendant argues that the decisions of its managerial and human resources personnel to criticize Plaintiff's performance, to demand Plaintiff's conformance to company policies, and to reassign staff are licit products of its business judgment. Plaintiff argues that the Court should discredit these reasons because of inconsistencies or incoherencies in them. DE 32, p. 14. Plaintiff argues that the contrary directions he received from his superiors and the human resources department undermine Defendant's defense of its actions. For instance, Plaintiff points to the following

inconsistency in Defendant's actions as a basis for disbelief of Defendant's articulated reason: Jim Miller, the bakery team leader, testified that part of Plaintiff's job was to unload unfinished product from the freezer and help unload delivery trucks.  Miller Depo. pp. 14-15.  Lorraine Kelly, Miller's supervisor, testified to the same effect.  Kelly Depo. pp. 46, 48.  However, Chrissenda Pierre-Louis, a human resources manager, testified that Plaintiff received an accommodation and did not have to unload items from trucks or the freezer.  Deposition of Chrissenda Pierre-Louis, DE 29, Ex. A, pp. 21-22 (hereinafter "Pierre-Louis Depo.").[11]  Thus, Plaintiff argues, the Court cannot give credence to Defendant's position that it was Plaintiff's failure to heed his employer's directives that motivated its actions because he had an exemption from those directives.

Defendant's trouble communicating clear signals to its employees is not discriminatory.  In numerous instances, Defendant's employees testified to their practice of refusing to record in writing accommodations made orally to employees.  See Kelly Depo. pp. 39-40; Pierre-Louis Depo. pp. 16-21; Deposition of Martine McKenzie, DE 29, Ex. B, pp. 15, 24-29.  The Court finds Defendant's failure to keep proper files and communicate among its managerial staff in these instances to be evidence of carelessness,

---

[11] However, the record indicates that Plaintiff did in fact regularly go to the freezer to bring things out.  Plaintiff testified that during the first incident with Lorraine Kelly regarding the necklace, he was wearing underneath the required red shirt a second t-shirt to keep his chest warm "because I used to go to the freezer constantly."  Zedeck Depo. p. 52.

but not animus or dishonesty.  Thus, Defendant's prerogative as an employer is a legitimate, non-discriminatory reason for its decision, made by its managerial staff, to require job duties of Plaintiff.  <u>Fleming Supermarkets</u>, 196 F.3d at 1361 (distinguishing between an unfair action and a discriminatory action).

Moreover, Defendant acts within its purview as employer when it directs Plaintiff's work.  Plaintiff complains of both the fact that Defendant increased his job duties to include baking doughnuts, retrieving items from the freezers, and unloading delivery trucks, and the manner in which these were communicated. It is entirely reasonable for an employee to have a negative reaction to such treatment by an employer.  But Plaintiff cannot establish any anti-religious bias motivating the increase in job duties.  Rather, all he has shown is that his employer required additional duties within what can be expected of a baker.  "Work assignment claims strike at the very heart of an employer's business judgment and expertise because they challenge an employer's ability to allocate its assets in response to shifting and competing market priorities."  <u>Davis</u>, 245 F.3d at 1244; <u>see also Damon v. Fleming Supermarkets of Fla., Inc.</u>, 196 F.3d 1354, 1361 (11th Cir. 1999) ("We are not in the business of adjudging whether employment decisions are prudent or fair.  Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.") (citation omitted).

Plaintiff also argues that Defendant's reason for reassigning its staff is pretext.  He can offer no differing explanation for

Defendant's action, other than the fact that it occurred after his refusal to remove his necklace. Zedeck Depo. p. 94; DE 32, p. 15. However, Kelly testified, on direct examination by Plaintiff's Counsel, that the bakery department operated as a team to accomplish the common task of producing marketable products. Kelly Depo. pp. 17-18, 88-90. Plaintiff quoted some of this testimony on the team aspect of the bakery in his Response. DE 32, p. 7 (citing Kelly Depo. pp. 17-18). Thus, as the supervisor in charge of not only the bakery but also the deli and Starbucks, whose goals cannot be said to be in contest with the bakery, Kelly was tasked with coordinating staff and operations to run her department properly and profitably. It does not withstand credulity to argue that Defendant would decrease its personnel and risk understaffing an area of the store where proper service and cleanliness are paramount simply to "get" Plaintiff. Therefore, Plaintiff has failed to establish that Defendant's business judgment is undeserving of credibility.

Finally, Plaintiff argues that Defendant's proffered reasons are pretext because they fail to account for the fact that his work was not criticized, additional job duties were not required of him, and the packers were not removed until after he first refused to remove his necklace. DE 32, pp. 14-15. However, the evidence clearly establishes that these things took place at the end of December during the busy holiday season and immediately thereafter when business declined sharply. Kelly Depo. pp. 44-48. While construed in the light most favorable to Plaintiff, the fact that

the end of December is a busy time for retail sales cannot be ignored.  Thus, it is to be expected that more is demanded of everyone during this time.  Similarly, it is common experience that after the holiday season, sales decline.  The fact that Defendant was juggling its staff at a time when sales, and thus traffic in all areas of the store including food service, were at first higher than expected and then fell by half is not remarkable.  <u>Id.</u> pp. 44-50.  Plaintiff's assertion that his work was criticized, job duties were expanded, and staff was reassigned after he refused to remove his necklace does not rebut Defendant's proffered legitimate, non-discriminatory reason for these actions: its business judgment during a busy season.  <u>Davis</u>, 245 F.3d at 1244-45.

None of the arguments contained in Plaintiff's Response (DE 32) meet Defendant's proffered reasons for its actions head-on and rebut them.  <u>Crawford</u>, 482 F.3d at 1308.  That is, none of them show that Defendant's stated reasons are pretext.  <u>Cf.</u> <u>Russell v. Acme-Evans Co.</u>, 51 F.3d 64, 68 (7th Cir. 1995) ("[P]retext means a lie, specifically a phony reason for some action.").  Likewise, Plaintiff has failed to demonstrate that a discriminatory reason more likely motivated Defendant's actions.  <u>Burdine</u>, 450 U.S. at 256.

### D. Conclusion

Therefore, based on the foregoing analysis, the Court finds that Plaintiff has failed, as a matter of law, to make out a <u>prima facie</u> case for religious discrimination.  However, if a reviewing court should find that he has proven a <u>prima facie</u> case, the Court

finds that Plaintiff has failed to show that Defendant's legitimate, non-discriminatory reasons for its actions are pretext. Absent "significant probative evidence" offered by Plaintiff that Defendant's proffered reasons are pretext, Defendant is entitled to judgment as a matter of law on Plaintiff's claims for religious discrimination under Title VII and the FCRA.   See Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376 (11th Cir. 1996) (quotations and citations omitted).

### IV. Constructive Discharge

In Count II of his Complaint, Plaintiff alleges a claim for constructive discharge in violation of Title VII.  To establish a claim for constructive discharge, Plaintiff must demonstrate that his working conditions were so harsh and unreasonable that a reasonable person in his position would have been forced to resign. Morgan v. Ford, 6 F.3d 750, 755-56 (11th Cir. 1993) (citations omitted).  Plaintiff need not prove that it was Defendant's purpose to force his resignation when it imposed such conditions on his work environment.   Pittman v. Hattiesburg Municipal Separate School, 644 F.2d 1071, 1077 (5th Cir. Unit A 1981).

The record establishes that Plaintiff's employer attempted to compel his compliance with a work rule prohibiting employees from wearing jewelry, ordered him to complete assigned tasks, and rearranged its staff during the busy season.  Plaintiff posits that the fact that he suffered from diabetes, previously had a heart attack, and had other general physical ailments prevented his continued employment.  See DE 32, pp. 15-16 ("When considering

Plaintiff's health, a reasonable person in Plaintiff's position would not have had the choice to continue his employment <u>because of physical and health limitations</u>.") (emphasis added).  This is not the standard.   Rather, to "successfully claim constructive discharge, a plaintiff must demonstrate that <u>working conditions were so intolerable</u> that a reasonable person in [his] position would have been compelled to resign." <u>Poole v. Country Club of Columbus</u>, 129 F.3d 551, 553 (11th Cir. 1997) (quotation omitted) (emphasis added).  Thus, Plaintiff's health problems, while perhaps prohibative of completing certain work-related tasks, do not of themselves support a finding of working conditions being so intolerable that he was forced to resign.[12]

Even considering Plaintiff's physical ailments, the Court finds that the working conditions created by Defendant's actions were not so intolerable that a reasonable employee would have had no choice but to resign.  In response to a third-party inspection company's report, Plaintiff's supervisor Lorraine Kelly attempted to bring her department into compliance with Defendant's policy on jewelry and federal law.  When Plaintiff refused to comply, he had recourse to Defendant's human resources department.  It is unclear whether he found solace there, and the Court construes this possible factual ambiguity in Plaintiff's favor; however, it is

---

[12] The Court notes that Plaintiff never formally notified Defendant that he should be on restricted duties because of his health condition.  Zedeck Depo. p. 87.  Additionally, while Plaintiff did inform Kelly of his condition, by his own admission it was not serious enough to warrant a real change in his normal work activity.  <u>Id.</u> p. 112.

undisputed that Plaintiff continued wearing his necklace.  Zedeck Depo. p. 95-96.

The Court does not doubt the veracity of Plaintiff's assertion that his work environment was hard to bear.  Zedeck Depo. p. 122. But Plaintiff cannot look to Title VII simply because he was told contradictory statements by human resources personnel and his direct supervisors, or because he was working in an understaffed department.   These do not rise to the level of constructive discharge.  Poole, 129 F.3d at 552 (reversing summary judgment entered in favor of the employer where plaintiff was derided by superior, had her key to her superior's office taken away, was unassisted in filing worker's compensation claim, relieved of all job duties, given only a chair and no desk, and was shunned by coworkers by order of her superior); Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1275, 1284 (11th Cir. 1999) (affirming summary judgment for employer where plaintiff received all Family and Medical Leave Act leave she requested, was paid for most of it, and was warned that further non-FMLA absences would result in discipline).

As to the issue of Defendant's supposed removal of packers in the bakery department, this surely could not have rendered Plaintiff's conditions "so intolerable" that he was forced to resign.  Plaintiff testified that, following the supposed removal of the packers, his supervisor Jim Miller "periodically" came in early to help him.  Zedeck Depo. p. 83.  However, Plaintiff resigned five working days after the packers' removal.  Id. p. 85.

Thus, assuming Miller began his shift early to help Plaintiff on at least two occasions, Plaintiff only worked in an understaffed department for between one and three days. Understaffing occasionally occurs in the natural turnover of private enterprise, though it is the norm in public service. Such a brief period of toilsome work is hardly intolerable; it is the real world. Title VII is not meant to address this sort of workaday inconvenience. Fitz v. Pugmire Lincoln-Mercury, Inc., 348 F.3d 974, 978-79 (11th Cir. 2003) (citations omitted).

Therefore, the Court finds that no genuine issues of material fact remain on the issue of whether Plaintiff's working conditions were so intolerable that a reasonable employee would have no choice but to resign, and that they were not so intolerable.[13]

## V. Conclusion

Plaintiff's Complaint (DE 1) alleges claims for discrimination and constructive discharge in violation of Title VII and discrimination in violation of the FCRA. The Court finds that no genuine issues of material fact remain on these issues, and that Defendant is entitled to judgment as a matter of law.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendant Target Corporation's Motion For Summary Judgment (DE 26) be and the same is hereby **GRANTED;** and

---

[13] The Court notes that, in support of his constructive discharge argument, Plaintiff dedicated less than ten lines of text in his Response (DE 32) to the instant Motion (DE 26). In addition, other than one cited for the rule, he cited no cases.

2. Final Summary Judgment will be entered by separate Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward
County, Florida, this   29th   day of May, 2008.

_____
WILLIAM J. ZLOCH
United States District Judge

Copies furnished:

All Counsel of Record